**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JACOB SEELEY, individually and on behalf of all persons similarly situated, ) )  ) | Case No.: 2:11-cv-00062-GMN-PAL |
| Plaintiff, ) | **ORDER** |
| vs. ) ) | |
| NEVADA ASSOCIATION SERVICES, INC., ) ) ) | |
| Defendant. ) ) | |

Before the Court is Plaintiff Jacob Seeley's Motion for Partial Summary Judgment (ECF No. 9) and Defendant Nevada Association Services, Inc.'s ("NAS") Countermotion for Summary Judgment (ECF No. 11.)  The Court GRANTS the Motion for Partial Summary Judgment and DENIES the Countermotion for Summary Judgment.

**I.      BACKGROUND**

Plaintiff owed his Homeowner's Association ("HOA") $80.00 when the HOA referred collection to NAS. (*See* Ex. 5 to Pl.'s Mot. for Partial Summ. J., ECF No. 9.)  NAS sent a letter to Plaintiff notifying him of the collection referral and the balance due, which had increased to $380.00 after costs and fees. (*See* "Letter" Ex. E to Def.'s Mot. for Summ. J., ECF No. 11.)

The letter stated:

> Nevada Association Services (NAS) has been retained by Madera Homeowners Association (also called the Association) to collect from you the overdue homeowner's assessments you owe to the Association. As of today's date, records show a balance due on your account of $380.00. Any statements or invoices you receive from your association or its managing agent will not reflect the total amount due.

> If you want to resolve this matter before a Notice of Delinquent Assessment Lien is recorded and sent to you pursuant to Nevada Revised Statutes, you must, within 10 days from the date of this letter, pay the balance due. Your payment must be in the form of cashier's check or money order, payable to Nevada Association Services, and mailed to the address indicated above. Should you decide not to pay within the 10 day period, this office will be entitled to proceed with the preparation and recordation of the Notice of Delinquent Assessment Lien. Should the Notice of Delinquent Assessment Lien be prepared and recorded, the additional cost to you will be $325.00 plus recording and mailing costs, there will also be a $30.00 charge to your account to release the Notice of Delinquent Assessment Lien, plus recording costs. These charges may not be all inclusive.

("Letter" Ex. E to Def.'s Mot. for Summ. J, ECF No. 11.) The second part of the letter explained Plaintiff's rights under Federal law to dispute the validity of the debt:

> Federal Law gives you 30 Days from the date you receive this letter (the 30 Day Period) to dispute the validity of the debt or any part thereof. If you do not dispute the validity of the debt or any portion thereof as outlined above, NAS will assume the debt is valid. If you do contest the validity of this debt or any portion thereof, by notifying NAS in writing to that effect, NAS will, as required by law, obtain and mail to you verification of the debt. And, within the 30 Pay Period you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, the Association, NAS will also furnish you with that information. Federal Law does not require NAS to wait until the end of the 30 Day Period to record the Notice of Delinquent Assessment Lien. If, however, you notify NAS, in writing, within the 30 Day Period, that begins with the receipt of this letter, that you dispute the debt or any portion thereof; or that you request the name and address of the original creditor, if the original creditor is different from the current creditor, the Association, NAS will, as required by law, cease collection of the debt or any disputed portion thereof until NAS obtains verification of the debt or the name and address of the original creditor and a copy of such verification or name of the original creditor is mailed to you by NAS.

(*Id*.) The letter was one page in length and the text of the letter was uniform in size and font. (*See id*.)

## II. SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[1] Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the

---

[1] Federal Rule of Civil Procedure 56 was recently amended, effective December 1, 2010. *See* Fed. R. Civ. P. 56 Advisory Committee Notes, 2010 Amendments. The standard for granting summary judgment remains the same. *Id.* Amendments to the Federal Rules of Civil Procedure govern proceedings that are pending at the time the amendments become effective, as long as the Supreme Court does not specify otherwise and the application would not be infeasible or work an injustice. Fed. R. Civ. P. 86(a)(2). Here, to prevent against any injustice to the parties, the Court will apply the language of Rule 56 that was in use prior to the new December 1, 2010 amendments. This earlier language was the language that was applicable when the Motion for Summary Judgment was filed and when the Response and Reply was submitted and, therefore, would be the most apt language to apply.

nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   ANALYSIS

**A.   Plaintiff's Right to Dispute the Debt was Overshadowed and Contradicted.**

The Federal Debt Collection Procedures Act ("FDCPA") requires that, when first communicating with a consumer in connection with the collection of a debt or within five days afterwards, debt

collectors shall send the consumer a written notice containing:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). The FDCPA also prohibits debt collectors from using "any false, deceptive, or *misleading* representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (emphasis added).

Even where a written notice contains all of the listed elements, this notice is not effectively conveyed where it is "overshadowed or contradicted by other messages or notices." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (per curiam); s*ee also Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1057 (9th Cir. 2002) (per curiam) (holding that the FDCPA was not violated where a validation notice was not overshadowed or contradicted by other language in the letter); *Terran v. Kaplan*, 109 F.3d 1428, 1434 (9th Cir. 1997) (holding that the FDCPA was not violated where a validation notice was not overshadowed or contradicted by other language in the letter).

"[T]he impact of language alleged to violate section 1692g is judged under the 'least sophisticated debtor' standard." *Swanson*, 869 F.2d at 1225. "That is, if we find that the least sophisticated debtor would likely be misled by the notice…, we must hold that the [debt

1 collector] has violated the Act." *Id*.

2 In 2006, Congress added language to the FDCPA to capture the types of violations found in case law, including the statement, "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b); Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966.

Here, as in *Swanson*, the notice "invokes a shorter response period [than the required 30 days], promising harm to the debtor who waits beyond 10 days" and "thus represents an attempt on the part of the collection agency to evade the spirit of the notice statute and mislead the debtor into disregarding the [required debt validation] notice." 869 F.2d at 1226 (internal quotation omitted).

Defendant argues that the approval of NAS's letters and forms by the Nevada Department of Business and Industry, Division of Financial Institutions ("FID") implies that the FDCPA was not violated. Defendant also argues that the absence of complaints about the form of the letter in the five years after FID approved it "strongly suggests that even the least sophisticated debtors were not confused by the text." (Def.'s Mot. for Summ. J. 12:4-5, ECF No. 11.)  The Court is not persuaded by this reasoning, and Defendant cites no legal authority to support this proposition.

Defendant also points out the right of a debt collector to record a Notice of Delinquent Assessment Lien even before thirty days have elapsed for the debtor to dispute the debt. Defendant argues, therefore, that the language in the letter giving the debtor ten days before this recording occurs is not the kind of "threatening contradiction" discussed in *Swanson* that overshadows the debtor's right to dispute the debt. (Def.'s Mot. for Summ. J. 11.)

However, in *Swanson*, the notice included the following message, in large bold face type:

**"IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS IT WILL NOT BE RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM.   A GOOD CREDIT RATING-IS YOUR MOST VALUABLE ASSET."**

869 F.2d at 1225.  The debt collector in *Swanson* clearly had a right to record the account as an unpaid collection item in its own master file, but the Court still found that "the substance of the language stands in threatening contradiction to the text of the debt validation notice," in violation of the FDCPA. *Id*. at 1226.  Here, as in *Swanson*, the tenor and text of Defendant's notice itself was threatening, particularly when juxtaposed with a possible lien and an additional $350 cost.

Finally, Defendant argues that "a FDCPA overshadowing violation does not take place unless there is overshadowing in both form and substance." (Def.'s Mot. for Summ. J. 8:24-25 (emphasis omitted).) To support this argument, Defendant points to *Terran*, where the Court of Appeals concluded "that the collection letter did not violate section 1692g," because it was "persuaded that the form and content of the additional language contained in [the debt collector]'s initial communication did not overshadow or contradict the validation notice." 109 F.3d at 1434.  The Court lists cases where other circuits have concluded that section 1692g was violated, pointing out that "[i]n each of these cases, payment was demanded within a time period less than the statutory thirty days granted to dispute the debt *and* this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt." *Id*. at 1433 (emphasis in original).

However, Defendant's argument overreaches, extrapolating a holding where there is merely a description of the letter before the Court of Appeals in *Terran*.  Likewise, Defendant mischaracterizes the opinion in *Muha v. Encore Receivable Management, Inc.*, 558 F.3d 623, 629 (7th Cir. 2009), as "expressly recogniz[ing] *Swanson* [citation omitted] as contrary authority on that point of law." (Def.'s Reply to Countermotion for Summ. J. 3:24-26, ECF No. 14.)[2]  This

---

[2] The Court of Appeals in *Muha* states: "Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment. Cf. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1226 (9th Cir. 1988) (per curiam)." 558 F.3d at 629.  A "Cf." signal indicates that "[c]ited authority supports a proposition different from the main proposition but sufficiently analogous to lend support," as opposed to signals that indicate contradiction such as "Contra," "But see" and "But cf." The Bluebook: A Uniform System of Citation R.1.2(a), (c), at 54-55 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

Court declines to accept Defendant's construction of *Terran*.

Nevertheless, here, both the form and the substance of the letter overshadowed the required notice. Although the text was uniform in font style and size, the threat to file a lien on the property and to impose additional costs preceded the notice of the rights to dispute the debt. Also, the information that upon written dispute, "NAS will, as required by law, cease collection of the debt or any disputed portion thereof " is buried at the end of the notice, preceded by the sentence: "Federal Law does not require NAS to wait until the end of the 30 Day Period to record the Notice of Delinquent Assessment Lien." ("Letter" Ex. E.) By first emphasizing the threat of a lien and additional costs in the letter, as well as NAS's rights under "Federal Law," the arrangement of these sentences and paragraphs is likely to mislead a "least sophisticated debtor" as to his rights under the FDCPA.

For the reasons described above, this Court concludes that a "least sophisticated debtor" would likely be misled by Defendant's notice due to the inclusion of overshadowing and contradictory language, and that the FDCPA was therefore violated. Plaintiff's Motion for Partial Summary Judgment is granted.

B.     **Whether the Amount of Collection Costs and Fees Were Expressly Authorized is a Disputed Material Fact**.

Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Conduct in violation of section 1692f includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless *such amount* is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). Nevada law authorizes a HOA to "charge a unit's owner *reasonable* fees to cover the costs of collecting any past due obligation. NRS 116.310313(1) (emphasis added). The Madera HOA "permits NAS to charge collection fees and costs as provided under applicable State and Federal

law, and the Association's governing documents." (Madera HOA Covenants, Conditions, and Restrictions ("CC&Rs"), Ex. C to Def.'s Mot. for Summ. J.)

In its summary judgment motion, Defendant argues that "NAS is Permitted to Pursue Collection Cost by both Nevada Law and the CC&Rs." (Def.'s Mot. for Summ. J. 12:11-12.) In support, Defendant refers to the CC&Rs and to Chapter 116 of the Nevada Revised Statutes. (Def.'s Mot. for Summ. J. 12-15.) However, Defendant offers no evidence that the *amount* is authorized, instead citing statutes and case law that merely permit NAS to pursue collection costs. Defendant makes no argument that the specific costs assessed and described in the letter to Plaintiff are authorized by the CC&Rs and Nevada law. Furthermore, Defendant does not address whether the Madera HOA specifically authorized as "reasonable" the amount of the costs and fees collected. Because Defendant does not adequately address Plaintiff's claim that Defendant violated the FDCPA under section 1692f(1), Defendant has not met its burden and is not entitled to judgment as a matter of law.

**IV.   CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

DATED this 26th day of September, 2011.

_____
Gloria M. Navarro
United States District Judge